## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| CHIRAG MODY, Derivatively on Behalf of DZS, INC. <br><br>          Plaintiff, <br><br>    v. <br><br> CHARLES D. VOGT, MATT BROSS, JOON KYUNG KIM, BARBARA CARBONE, CHOON YUL YOO, DAVID R. SCHOPP, MIN WOO NAM, and MISTY KAWECKI, <br><br>          Defendants, <br><br>    and <br><br> DZS, INC., <br><br>          Nominal Defendant. | Case No: 4:24-cv-00917 <br><br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br><br><br><br> <u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Chirag Mody ("Plaintiff"), by and through his undersigned counsel, derivatively on behalf of DZS, Inc. ("DZS" or the "Company"), submits this Verified Shareholder Derivative Complaint (the "Complaint"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by the Company with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, matters of public record, and confidential Company documents produced pursuant to 8 *Del. C.* § 220 ("§ 220").

## <u>NATURE OF THE ACTION</u>

1.      This is a shareholder derivative action brought in the right, and for the benefit, of the Company against certain of its officers and directors seeking to remedy the Individual Defendants' (defined below) violations of state and federal law that have occurred from August 2, 2022 through the present (the "Relevant Period") and have caused substantial harm to the Company.

## JURISDICTION

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)(1)), Rule 14a-9 of the Exchange Act (17 C.F.R. § 240.14a-9). This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

3.      This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the courts of this District permissible under traditional notions of fair play and substantial justice.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because: (i) the Company maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to the Company, occurred in this District; and (iv) Defendants have received

substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

5.      In connection with the acts, transactions, and conduct alleged herein, the Individual Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## THE PARTIES

### Plaintiff

6.      ***Plaintiff Chirag Mody*** ("Mody") is, and was at all relevant times since December 29, 2022, a shareholder of the Company.  Plaintiff Mody will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

### Nominal Defendant

7.      ***Nominal Defendant DZS*** is a Delaware corporation with its principal executive offices located at 5700 Tennyson Parkway, Suite 400, Plano, Texas 75024.  During the Relevant Period, the Company's common stock traded on the NASDAQ Global Select Market (the "NASDAQ") under the symbol "DZSI."

### Director Defendants

8.      ***Defendant Charles D. Vogt*** ("Vogt") has served as the Company's President and Chief Executive Officer ("CEO") at all relevant times.

9.      ***Defendant Matt Bross*** ("Bross") has served as a director of the Company since January 4, 2021.  Defendant Bross serves as a member of the Compensation Committee, Corporate Governance and Nominating Committee, and as Chair of the Strategy Committee.

10.    **Defendant *Joon Kyung Kim*** ("Kim") has served as a director of the Company since January 6, 2020. Defendant Kim serves as a member of the Compensation Committee, Corporate Governance and Nominating Committee, and as Chair of the Audit Committee.

11.    **Defendant *Barbara Carbone*** ("Carbone") has served as a director of the Company since January 4, 2021.  Defendant Carbone serves as a member of the Audit Committee and as Chair of the Compensation Committee and Corporate Governance and Nominating Committee.

12.    **Defendant *Choon Yul Yoo*** ("Yoo") served as a director of the Company from August 8, 2019 through to 2024.

13.    **Defendant *David R. Schopp*** ("Schopp") served as a director of the Company from 2018 through to his resignation in May 2024.  During his tenure, Defendant Schopp served as a member of the Audit Committee, Corporate Governance and Nominating Committee, and Strategy Committee.

14.    **Defendant *Min Woo Nam*** ("Nam") served as a director and Chairman of the Company from 2016 through to his resignation in September 2023.  During his tenure, Defendant Nam served as a member of the Strategy Committee.

15.    Defendants Vogt, Bross, Kim, Carbone, Yoo, Schopp, and Nam are collectively referred to herein as the "Director Defendants."

**Officer Defendant**

16.    **Defendant *Misty Kawecki*** ("Kawecki") served as the Company's Chief Financial Officer ("CFO") from August 2021 through to September 2024.

17.    The Director Defendants and Defendant Kawecki are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Based in Plano, Texas, DZS is a provider of fiber access and optical telecommunications networking and cloud software technology.  DZS generally sells its products and services directly to carriers and service providers that offer voice, data and video services to businesses, government, utilities, and residential subscribers.  DZS's customer base consists of regional, national, and international carriers and services providers.

### Accounting for Revenue Recognition

19.     Revenue recognition is a generally accepted accounting principle ("GAAP").  The principle defines when and how a business' revenue should be recorded in its financial statements. Revenue recognition dictates when business income is realized and earned, when payment from the customer is received, and which accounting period revenue should be attributed to.

20.     Since correctly recognizing and deferring revenue is important for understanding the profitability and financial health of a business, revenue recognition is an important consideration for every organization.   Not only does it have significant implications for a company's financial performance, compliance, and management decisions, but proper revenue recognition is necessary for staying compliant with regulatory standards.  Accurate and timely revenue recognition will help maintain stakeholder trust and ensure the long-term success of a company.

21.     Accounting Standards Codification ("ASC") 606 provides businesses with a universal framework for recognizing revenue from customer sales.  The Financial Accounting Standards Board ("FASB") and International Accounting Standards Board ("IASB") released ASC 606 in May 2014.

5

22.    ASC 606 is a simplified, universal set of stipulations for revenue recognition that all businesses now adhere to.  It is consistent across all industries, replacing older industry-specific revenue-recognition standards.  Conversion to a standardized set of guidelines has resulted in better transparency, more accountability, and easier comparison of financial statements between companies and industries.

23.    Critically, ASC 606 requires that revenue is recognized when the delivery of promised goods or services matches the amount expected by the company in exchange for those goods and services.

24.    There are five steps needed to satisfy the updated revenue recognition principle: (1) identify the contract with the customer; (2) identify contractual performance obligations; (3) determine the amount of consideration/price for the transaction; (4) allocate the determined amount of consideration/price to the contractual obligations; and (5) recognize revenue when the performing party satisfies the performance obligation.

**The Company's Executives Should Have**
**<u>Been Aware of Proper Accounting Treatment</u>**

25.    Certain of the Individual Defendants have extensive experience and expertise in the financial and accounting industries.  For instance, Defendant Kim, according to the Company's 2023 Proxy Statement, "holds a Bachelor of Science degree in Business Administration from the University of California, Berkeley and is a Certified Public Accountant." As a result, Defendant Kim was deemed a "Financial Expert" in the Company's 2023 Proxy Statement.

26.    Likewise, Defendant Kawecki "started her career at Big 4 accounting firm EY … has a Master of Science degree in Accounting from Texas Tech University" and "is a Certified Public Accountant in the state of Texas."

27.     Similarly, Defendant Carbone obtained a Bachelor of Science in Business, Accounting from California State University – Sacramento and then worked for KPMG LLP as a partner, having previously worked in a variety of accounting- and audit-related roles within KPMG.  As such, Defendant Carbone was deemed a "Financial Expert" in the Company's 2023 Proxy Statement.

28.     Accordingly, these Individual Defendants, with extensive accounting experience, are, or should be, familiar with applicable accounting standards and the proper revenue recognition for certain customer contracts. Despite this, as the Company admitted in its Form 10-K Annual Report, filed with the SEC for fiscal year ended December 31, 2023 ("2023 10-K"):

> We did not appropriately design, implement and maintain effective controls over the revenue recognition process, relating to the proper application of Accounting Standards Codification Topic 606, *Revenue from Contracts with Customers*. The root cause of these control gaps was the inadequate or ineffective process level controls (including but not limited to controls around capturing and managing changes to customer order terms in the company's records, timely processing of customer product returns, oversight of 3rd party business partners, and evaluating non-standard customer shipping terms, and ensuring consistent commitment to integrity and ethical values in documenting and recording revenue arrangements.
>
> ***
>
> In the fourth quarter of 2022, the Company entered into a significant sales agreement with an existing customer which was subject to unique delivery terms. In reviewing the accounting for the revenue transaction, our management identified a deficiency in the effectiveness of a control intended to properly document and review relevant facts in connection with revenue recognition related to such transaction. Accordingly, a material error was detected in recorded revenue in our 2022 preliminary consolidated financial statements as a result of this misapplication of U.S. GAAP.

## MATERIALLY FALSE AND MISLEADING STATEMENTS

29.     On August 2, 2022, the Company filed with the SEC its quarterly report on Form 10-Q for the period ending June 30, 2022 (the "2Q22 10-Q"), claiming that "there were no changes in [DZS's] internal control over financial reporting that occurred during [the Company's] last fiscal

quarter that have materially affected, or are reasonably likely to materially affect, [DZS's] internal control over financial reporting."

30.    Attached to the 2Q22 10-Q were certifications signed by Defendants Kawecki and Vogt pursuant to the Sarbanes-Oxley Act of 2022 ("SOX"), which further attested to the effectiveness of the Company's internal control over financial reporting and the disclosure of all fraud.

31.    On November 1, 2022, the Company filed with the SEC its quarterly report on Form 10-Q for the period ending September 30, 2022 (the "3Q22 10-Q"). The Company once again led the market to believe that DZS's internal control over financial reporting was effective, claiming for example, that there "were no changes in [DZS's] internal control over financial reporting … that have materially affected, or are reasonably likely to materially affect, [DZS's] internal control over financial reporting." Similarly, Defendants Vogt and Kawecki signed and submitted SOX certifications, attesting to the design and reliability of the Company's internal control over financial reporting.

32.    On March 10, 2023, DZS filed with the SEC its Annual Report on Form 10-K for the year ended December 31, 2022 (the "2022 10-K"), which included as attachments SOX certifications signed by Defendants Vogt and Kawecki. The 2022 10-K was also reviewed, approved, and signed by Defendants Vogt, Kawecki, Nam, Bross, Carbone, Kim, Schopp, and Yoo.

33.    Therein, the 2022 10-K stated that the Company:

[M]aintain[s] disclosure controls and procedures designed to provide reasonable assurance that information required to be disclosed in [its] reports filed or submitted pursuant to the Securities Exchange Act of 1934 (the "Exchange Act") is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial

Officers, as appropriate to allow for timely decisions regarding required disclosures.

34.    Notwithstanding the presence of these controls, the 2022 10-K revealed that management, including Defendants Vogt and Kawecki, "concluded that [DZS's] disclosure controls and procedures were not effective as of December 31, 2022, due to a material weakness in internal control over financial reporting."  Specifically, the 2022 10-K explained in relevant part:

> In the fourth quarter of 2022, the Company entered [into] a significant sales agreement with an existing customer which was subject to unique delivery terms. In reviewing the accounting for the revenue transaction, our management identified a deficiency in the effectiveness of a control intended to properly document and review relevant facts in connection with revenue recognition related to such transaction.  Accordingly, a material error was detected in recorded revenue in our 2022 preliminary consolidated financial statements as a result of this misapplication of U.S. GAAP. The December 31, 2022 consolidated financial statements included in this Annual Report on Form 10-K and in our earnings press release filed on February 16, 2023 with our Current Report on Form 8-K have been corrected prior to issuances.
>
> ***
>
> The existence of one or more material weaknesses or significant deficiencies could result in errors in our financial statements, and substantial costs and resources may be required to rectify any internal control deficiencies. If we cannot produce reliable financial reports, investors could lose confidence in our reported financial information, we may be unable to obtain additional financing to operate and expand our business and our business and financial condition could be harmed.

35.    Then, on April 17, 2023, the Company filed its 2023 Proxy Statement with the SEC on Schedule DEF14A, in which the Board – consisting of Defendants Vogt, Bross, Carbone, Kim, Yoo, Nam, and Schopp – solicited shareholder votes to approve, *inter alia*: (i) the re-election of Defendants Carbone and Kim to the Board; and (ii) the compensation of certain named executive officers, including Defendants Vogt and Kawecki.

36.    The 2023 Proxy Statement contained the following, in relevant part:

The Audit Committee has been established for the purpose of overseeing the accounting and financial reporting processes of the Company and audits of DZS' financial statements and internal control over financial reporting. DZS' Audit Committee is made up solely of independent directors, as defined in the applicable Nasdaq and SEC rules, and it operates under a written charter adopted by the Board of Directors. The composition of the Audit Committee, the attributes of its members and its responsibilities, as reflected in its charter, are intended to be in accordance with applicable requirements for corporate audit committees. As described more fully in the charter, the purpose of the Audit Committee is to assist the Board of Directors in its general oversight of DZS' financial reporting, internal controls and audit functions. Management is responsible for the preparation, presentation and integrity of DZS' financial statements, accounting and financial reporting principles, internal controls, and procedures designed to assure compliance with accounting standards, applicable laws and regulations. Ernst & Young, LLP, DZS' independent registered public accounting firm, is responsible for performing an independent audit of DZS' consolidated financial statements in accordance with generally accepted auditing standards. The Audit Committee periodically meets with Ernst & Young, with and without management present, to discuss the results of their examinations, their evaluations of DZS' internal controls and the overall quality of DZS' financial reporting. The functions of the Audit Committee members are not intended to duplicate or to certify the activities of management and the independent registered public accounting firm, Ernst & Young. The Audit Committee serves a board level oversight role, in which it provides advice, counsel and direction to management and Ernst & Young on the basis of the information it receives, discussions with management and Ernst & Young, and the experience of the Audit Committee's members in business, financial and accounting matters.

In performing its oversight role, the Audit Committee reviewed and discussed the audited financial statements with management and Ernst & Young. The Audit Committee also discussed with Ernst & Young the matters required to be discussed by the applicable requirements of the Public Company Accounting Oversight Board and the SEC. The Audit Committee has received the written disclosures and the letter from Ernst & Young required by applicable requirements of the Public Company Accounting Oversight Board regarding Ernst & Young's communications with the Audit Committee concerning independence and has discussed with Ernst & Young its independence from management and the Company. In reliance on these reviews and discussions, and the reports of Ernst & Young, the Audit Committee recommended to the Board of Directors, and the Board of Directors approved, the inclusion of the audited financial statements in DZS' Annual Report on Form 10-K for the year ended December 31, 2022 for filing with the SEC.

37.    The 2023 Proxy Statement also contained the following with respect to the

Company's corporate governance:

We are dedicated to maintaining the highest standards of business integrity. It is our belief that adherence to sound principles of corporate governance, through a system of checks, balances and personal accountability, is vital to protecting our reputation, assets, investor confidence and customer loyalty. Above all, the foundation of our integrity is our commitment to sound corporate governance.

38.    These statements contained in the 2023 Proxy Statement were materially false and/or misleading because (i) the Audit Committee did not oversee the Company's accounting and internal financial controls; (ii) the financial statements, which the Audit Committee purportedly reviewed and approved, were inaccurate as a result of the improper accounting of certain customer contracts; and (iii) contrary to the 2023 Proxy Statement, the Director Defendants did not maintain the "highest standards of business integrity" or "protect[] [the Company's] reputation, assets, investor confidence."

39.    Moreover, the 2023 Proxy Statement failed to disclose that: (i) DZS' internal controls over financial reporting was patently defective; (ii) DZS' financial statements contained material errors; (iii) as a result, DZS would need to restate its previously filed financial statements; and (iv) as a result, the statements regarding the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. As such, the foregoing statements in the 2023 Proxy Statement was a half-truth, meaning that the Director Defendants were required to (yet failed to) include all additional information necessary to make the statement not misleading. *See* 17 C.F.R. § 240.12b-20.

40.    On May 8, 2023, the Company filed with the SEC a press release on Form 8-K announcing its first quarter 2023 financial results, stating in relevant part:

"Q1 revenue of $91 million resulted in an 18% increase year-over-year and 23% increase on a constant currency basis. While near-term macroeconomic conditions, slower than expected government disbursements, and timing with certain deployment schedules are impacting maximum growth potential, DZS continues to make encouraging progress in positioning the company to benefit from what will be a long-term secular growth trend," said Charlie Vogt, President and CEO of

DZS. "While we remain relentlessly focused on our customers and prospective customers, balancing our near-term investments to deliver revenue growth, gross margin expansion and sustainable earnings is our number one priority."

CFO Misty Kawecki added, "Q1 revenue was within the guidance range of $90100 million. We continue to pull forward lower margin product shipments which comprise of higher component cost absorbed during the pandemic. Of our remaining RPOs of $304 million and forecasted in-year revenue conversion, we anticipate that Q1 represents the low end of our gross margin outlook. Furthermore, our accelerated cost saving will translate into improved profitability during the second half of the year."

Q1 2023 Financial Highlights

- Orders of $80 million compared to $101 million in Q1 2022
- Revenue of $91 million increased 18% compared to $77 million in Q1, 2022 and 23% on a constant currency basis.

41.    The following day, on May 9, 2023, DZS filed with the SEC its quarterly report on Form 10-Q for the period ended March 31, 2023 (the "1Q23 10-Q").  Attached to the 1Q23 10-Q were SOX certifications signed by Defendants Vogt and Kawecki. The 1Q23 10-Q provides the following tables purportedly showing the Company's net revenues, gross profit, cash flows, and sources of revenue:

**RESULTS OF OPERATIONS**

The table below presents the historical consolidated statement of comprehensive income (loss) as a percentage of revenues and year-over-year changes (dollars in thousands).

| | Three months ended March 31, | | | | |
| | 2023 | % of net revenue | 2022 | % of net revenue | Increase (Decrease) |
|---|---|---|---|---|---|
| Net revenue | $ 90,812 | 100 % | $ 77,040 | 100 % | 17.9 % |
| Cost of revenue | 60,985 | 67 % | 50,215 | 65 % | 21.4 % |
| Gross profit | 29,827 | 33 % | 26,825 | 35 % | 11.2 % |
| Operating expenses: | | | | | |
| Research and product development | 14,851 | 16 % | 11,844 | 15 % | 25.4 % |
| Selling, marketing, general and administrative | 24,781 | 27 % | 17,742 | 23 % | 39.7 % |
| Restructuring and other charges | 4,152 | 5 % | 436 | 1 % | 852.3 % |
| Amortization of intangible assets | 1,271 | 1 % | 294 | 1 % | 332.3 % |
| Total operating expenses | 45,055 | 49 % | 30,316 | 40 % | 48.6 % |
| Operating loss | (15,228) | (16)% | (3,491) | (5)% | 336.2 % |
| Interest expense, net | (792) | (1)% | (90) | — % | 780.0 % |
| Other income (expense), net | 728 | 1 % | (800) | (1)% | (191.0)% |
| Loss before income taxes | (15,292) | (16)% | (4,381) | (6)% | 249.1 % |
| Income tax provision | 1,843 | 2 % | (1,333) | (2)% | (238.3)% |
| Net loss | $ (17,135) | (18)% | $ (3,048) | (4)% | 462.2 % |

**DZS INC. AND SUBSIDIARIES**
**Unaudited Condensed Consolidated Statements of Cash Flows**
**(In thousands)**

| | Three months ended March 31, | |
| --- | --- | --- |
| | 2023 | 2022 |
| Cash flows from operating activities: | | |
| Net loss | $ (17,135) | $ (3,048) |
| Adjustments to reconcile net income (loss) to net cash provided by (used in) operating activities: | | |
| Depreciation and amortization | 2,465 | 1,081 |
| Amortization of deferred financing costs | 60 | — |
| Stock-based compensation | 4,486 | 2,871 |
| Provision for inventory write-down | 1,086 | 705 |
| Bad debt expense, net of recoveries | (184) | (752) |
| Provision for sales returns | 541 | 1,448 |
| Provision for warranty | 70 | 121 |
| Unrealized loss (gain) on foreign currency transactions | 1,396 | 874 |
| Subsidiary dissolution | — | (68) |
| Loss on disposal of property, plant and equipment | 40 | — |
| Changes in operating assets and liabilities: | | |
| Accounts receivable | 11,033 | 2,761 |
| Other receivable | (3,511) | 126 |
| Inventories | 7,051 | (10,931) |
| Contract assets | (29) | 1,261 |
| Prepaid expenses and other assets | (3,138) | (7,377) |
| Accounts payable | (13,875) | 1,586 |
| Contract liabilities | (3,493) | (1,446) |
| Accrued and other liabilities | 131 | 456 |

**Net Revenue**

The following table presents our revenues by product technology (dollars in thousands):

| | Three Months Ended March 31, | | Increase (Decrease) |
| --- | --- | --- | --- |
| | 2023 | 2022 | |
| Access Networking Infrastructure | $ 79,459 | $ 72,462 | 9.7 % |
| Cloud Software & Services | 11,353 | 4,578 | 148.0 % |
| Total | $ 90,812 | $ 77,040 | 17.9 % |

Our revenue from sales of access networking infrastructure products includes Access Edge, Optical Edge, and Subscriber Edge network solutions. Our cloud software and services revenue represents revenue from our Cloud Software solutions including DZS Xtreme, Express and CloudCheck software, and revenue from maintenance and other professional services associated with product shipments.

For the three months ended March 31, 2023, access networking infrastructure revenue increased by 9.7% or 7.0 million to $79.5 million from $72.5 million in the same period last year. The increase was primarily attributable to higher spending levels from our major customers in Asia. The increase in cloud software and services revenue was primarily due to the increased product and software sales and revenue related to the ASSIA Acquisition.

The following table presents our revenues by geographical concentration (dollars in thousands):

| | Three Months Ended March | | Increase (Decrease) |
| --- | --- | --- | --- |
| | 2023 | 2022 | |
| Americas | $ 24,855 | $ 23,061 | 7.8 % |
| Europe, Middle East, Africa | 19,182 | 18,649 | 2.9 % |
| Asia | 46,775 | 35,330 | 32.4 % |
| Total | $ 90,812 | $ 77,040 | 17.9 % |

Our geographic diversification reflects the combination of market demand, a strategic focus on capturing market share through new customer wins and new product introductions.

42.    The 1Q23 10-Q also provides the following with respect to the Company's revenue recognition during the quarter:

*Contract Balances*

The Company records contract assets when it has a right to consideration and records accounts receivable when it has an unconditional right to consideration. Contract liabilities consist of cash payments received (or unconditional rights to receive cash) in advance of fulfilling performance obligations. The majority of the Company's performance obligations in its contracts with customers relate to contracts with duration of less than one year.

The opening and closing balances of current and long-term contract assets and contract liabilities related to contracts with customers are as follows:

| | Contract assets | | Contract liabilities | |
|---|---|---|---|---|
| December 31, 2022 | $ | 576 | $ | 29,641 |
| March 31, 2023 | $ | 605 | $ | 29,225 |

The decrease in contract liabilities during the three months ended March 31, 2023 was primarily due to the revenue recognition criteria being met for previously deferred revenue, partially offset by invoiced amounts that did not yet meet the revenue recognition criteria. The amount of revenue recognized in the three months ended March 31, 2023 that was included in the prior period contract liability balance was $7.4 million. This revenue consists of services provided to customers who had been invoiced prior to the current year. We expect to recognize approximately 75% of outstanding contract liabilities as revenue over the next 12 months and the remainder thereafter.

The balance of contract cost deferred as of March 31, 2023 and December 31, 2022 was $0.5 million and $1.0 million, respectively. During the three months ended March 31, 2023, the Company recorded $0.5 million in amortization related to contract cost deferred as of December 31, 2022.

43.     In addition, the 1Q23 10-Q stated that management "has begun implementing a remediation plan to reassess the design of [the Company's] controls and modify [its] processes related to the accounting for significant revenue transactions as well as enhancing monitoring and oversight controls in the application of accounting guidance related to such transactions." Notwithstanding, the 1Q23 10-Q again represented that "there were no changes in [DZS's] internal control over financial reporting … that have materially affected, or are reasonably likely to materially affect, [DZS's] internal control over financial reporting."

44.     However, these statements were materially false and/or misleading because they misrepresented and failed to disclose that: (i) DZS' internal controls over financial reporting was patently defective; (ii) DZS' financial statements contained material errors; (iii) as a result, DZS would need to restate its previously filed financial statements; and (iv) as a result, the statements regarding the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**THE TRUTH EMERGES**

45.     On June 1, 2023, before the market opened, DZS filed a Current Report on Form 8-K with the SEC, revealing the discovery of an accounting error relating to the timing of revenue recognition with respect to certain customer projects.  Specifically, the 8-K provided in relevant part:

**Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**

On May 31, 2023, the Audit Committee (the "Audit Committee") of the Board of Directors of DZS Inc. (the "Company"), in consultation with the Company's management, determined that the Company's previously issued unaudited condensed consolidated financial statements as of and for the three months ended March 31, 2023 (the "Subject Period") contained an accounting error relating to the timing of revenue recognition with respect to two customer projects for the Subject Period. The value of the revenue to be restated is approximately $15 million, of which the Company anticipates the majority will be recognized during the three months ending June 30, 2023 and the three months ending September 30, 2023.  As a result of this error, the Audit Committee determined that the Company's unaudited condensed consolidated financial statements for the Subject Period should no longer be relied upon and should be restated. Similarly, any previously issued or filed reports, press releases, earnings releases, investor presentations or other communications of the Company describing the Company's financial results or other financial information relating to the Subject Period should no longer be relied upon.

The required adjustments were identified during a recent internal review of the transactions regarding the applicable customers.

As a result of the accounting error, the Company intends to (a) restate its unaudited condensed consolidated financial statements and the notes thereto with respect to the Subject Period in an amendment to the Company's Quarterly Report on Form 10-Q for the three months ended March 31, 2023 (the "Amended 10-Q") to be filed with the Securities and Exchange Commission (the "SEC") and (b) amend, among other related disclosures, its Management's Discussion and Analysis of Financial Condition and Results of Operations for the Subject Period in the Amended 10-Q. The adjustments to such financial statement items will be set forth through expanded disclosure in the financial statements included in the Amended 10-Q, including further describing the restatement and its impact on previously reported amounts.  Although the Company cannot at this time estimate when it will file its restated financial statements and the Amended 10-Q, it is diligently pursuing completion of the restatement and intends to make such filing as soon as reasonably practicable.

The description in this report of the accounting error, the required adjustments and the expected impacts of the restatement are preliminary, unaudited and subject to further change in connection with the ongoing review of the accounting error and the completion of the restatement. Accordingly, there can be no assurance that the actual effects of the restatement will be only as described above.

The Company's management and the Audit Committee have discussed, and continue to discuss, the matters disclosed in this Item 4.02 with the Company's independent registered public accounting firm, Ernst & Young LLP.

46.     That same day, the Company issued a second press release revealing that the discovery also required the Company to downward adjust its previously issued guidance, stating in relevant part:

### DZS to Restate First Quarter 2023 Financial Statements and Updates Full Year 2023 Guidance

**DALLAS, Texas, USA, June 01, 2023** – DZS (Nasdaq: DZSI), a global leader of access, optical and cloud-controlled software defined solutions, today announced that it will restate its previously issued financial statements for the first quarter of 2023, which ended March 31, 2023. The restatement relates to timing of revenue recognition with respect to two customer projects. The value of the revenue to be restated is approximately $15 million, of which the company anticipates the majority will be recognized during the second and third quarters of 2023. The associated customer relationships are in good standing, and the customers have begun paying the amounts due to the Company.

**Full Year 2023 Guidance**

"We are withdrawing the Q2 earnings guidance issued on May 8, 2023 and will provide updated Q2 guidance once we have clarity regarding the timing of the recognition for the restated Q1 revenue and adjusted EBITDA," said Misty Kawecki, Chief Financial Officer of DZS. "The most significant of the two revenue restatements is with a long standing, highly valued customer. We are focused on completing the restatement process as quickly as practicable. At the end of March 2023, our total RPOs were valued at $304 million. We remain encouraged and optimistic about the second half of 2023 and into 2024 aligned with a strong sales pipeline and validated by numerous Tier I/II trials around the world. Finally, we are adjusting our full-year guidance, taking into consideration the risk that customers may take longer to deploy their current inventory. For additional information regarding our market opportunity, product portfolio and growth pillars, visit our investor relations page to view our investor day presentations."

**Full Year 2023**

• Net revenue of approximately $370 million vs. approximately $400 million previously

• Adjusted gross margin remains in a range of 35%-37%

16

- Adjusted operating expenses of approximately $115 million vs. $115-120 million previously

- Adjusted EBITDA of approximately $15-22 million vs. $22-27 million previously

    (1) Item represents a non-GAAP measure

47.    On this news, the Company's stock declined $2.17 per share, or 36%, to close at $3.82 per share on June 1, 2023.

48.    Subsequently, the Company filed several late filing notices with the SEC on Form NT 10-Q and NT Form 10-K, noting that it would be unable to timely file its quarterly and annual reports throughout 2023 and 2024.  Meanwhile, the Company's share price continued to decline.

49.    Over a year later, on August 6, 2024, the Company received a letter from NASDAQ indicating that the Nasdaq Hearing Panel ("the Panel") had determined to delist the common stock of the Company from Nasdaq (the "Decision"). The Decision indicated that the Company failed to meet the August 5, 2024, deadline to regain compliance with its periodic filing obligations under Nasdaq Listing Rule 5250(c)(1).

50.    On this news, the Company's share price fell from $1.04 per share on August 6, 2024 to a close of $0.52 on August 7, 2024. The Company's share price, however, continued its decline.

51.    Then, on August 13, 2024, the Company finally issued its restated financial statements for 1Q22, 2Q22, 3Q22, FY2022, 1Q23, 2Q23, 3Q23, and issued its financial results for FY2023. The Company also issued its results for 1Q24 and 2Q24 on August 20, 2024 and September 3, 2024, respectively.

52.     Following the Company's financial restatements, its stock price took another hit, falling from a close of $0.18 on August 13, 2024 to a close of $0.12 on August 14, 2024. The Company's stock declined even further to a low of $0.10 per share on September 3, 2024.

## KNOWLEDGE OF THE INDIVIDUAL DEFENDANTS

53.





54.

55.

56.



57.

58.



59.

60.



61.

62.

63. ███████████████████████████████

███████████████████████████████████

████████████████████████████

64. ███████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████

65. ███████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████

████████





66.

67.

68.

69.

███████████████████████████████████████

███████████████████████████████████

70.    ███████████████████████████████

████████████████████████████████████

███████████████████████



███████

71.    ██████████████████████████████

█████████████████████████████████████

██████████████

72.    ██████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████████████

73. 

## DAMAGE TO THE COMPANY

**Securities Class Action**

74.      On June 14, 2023, a securities class action complaint was filed in the United States District Court for the Eastern District of Texas against the Company and Defendants Vogt and Kawecki.  The complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5, in the case captioned: *Shim v. DZS, Inc., et al.*, Case No. 4:23-cv-00549 (E.D. Tex.) (the "*Shim* Class Action").

75.      On June 27, 2023, a securities class action complaint was filed in the United States District Court for the Eastern District of Texas against the Company and Defendants Vogt and Kawecki.  The complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5, in the case captioned: *Link v. DZS, Inc., et al.*, Case No. 4:23-cv-00603 (E.D. Tex.) (the "*Link* Class Action").

76.      On August 9, 2023, another securities class action complaint was filed in the United States District Court for the Eastern District of Texas against the Company and Defendants Vogt and Kawecki.  The complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5, in the case captioned: *Cody v. DZS, Inc., et al.*, Case No. 4:23-cv-00713 (E.D. Tex.) (the "*Cody* Class Action").

77.    Then, on September 12, 2023, following lead plaintiff motions, the *Shim*, *Link*, and *Cody* Actions were consolidated with the *Shim* Action designated as the Lead Case (the "Securities Class Action").

78.    As a result of the wrongs complained of herein, the Individual Defendants have subjected the Company to the significant cost of defending itself and certain of the Company's officers.  The Company will continue to incur significant sums in relation to the Securities Class Action and any liability or settlement that results.

**Unjust Compensation**

79.    At all relevant times, the Company paid lucrative compensation to each of the Individual Defendants. The Company paid the Individual Defendants in connection with their respective roles as officers and/or directors of the Company.

80.    Accordingly, as part of their respective roles, the Individual Defendants were required to, among other things, exercise due care and diligence in the management and administration of the affairs of the Company, act ethically and in compliance with all laws and regulations, maintain adequate internal controls, and conduct business in a fair and transparent manner.  Further, each of the Individual Defendants had additional duties and responsibilities owed to the Company by virtue of their executive, directorial and/or committee roles, as described *infra*, for which they were compensated for.

81.    However, the Individual Defendants failed to carry out their duties adequately or at all, causing harm to the Company, as alleged herein.  Because the Individual Defendants failed to carry out their respective duties, the compensation they received during the Relevant Period was excessive and undeserved.  As such, the Individual Defendants were unjustly enriched to the detriment of the Company.

**Additional Damage to the Company**

82.    In addition to the damages specified above, the Company will also suffer further losses in relation to any internal investigations and amounts paid to lawyers, accountants, and investigators in connection thereto.

83.    The Company will also suffer losses in relation to the Individual Defendants' failure to maintain adequate internal controls, including the expense involved with implementing and maintaining improved internal controls.

84.    The Company has also suffered, and will continue to suffer, a loss of reputation as a direct and proximate result of the Individual Defendants' misconduct which will plague the Company's share price going forward

## CORPORATE GOVERNANCE

85.    At all relevant times, the Company had in place extensive corporate governance documents imposing duties and responsibilities on its directors and officers, and additional duties on the Company's committee members. Accordingly, each of the Individual Defendants were required to comply with the corporate governance documents, as detailed below.

86.    Despite the following corporate governance, the conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that the Individual Defendants were aware posed a risk of serious injury to the Company.

**Code of Conduct and Ethics**

87.    At all relevant times hereto, the Company had in place its Code of Conduct and Ethics ("Code of Conduct") which applies to all "officers, directors and employees." On the first page of the Code of Conduct, there is a message from Defendant Vogt which states:

> Team,
>
> Please see the attached Code of Conduct and Ethics global guide for doing business at DZS, which covers in detail the responsibilities for all employees at all levels and everywhere we operate in the world. Operating with the highest ethical standards and integrity matters to our customers, partners, colleagues, stakeholders, and communities. It is a no. 1 priority for me and our management team and paramount to how we conduct business.
>
> Please review the Code of Conduct carefully as it is essential for all employees to understand our Code of Conduct and Ethics and adhere to it in our daily operations. We share a responsibility to act and lead with integrity in ways that protect and enhance the reputation of our employees and our company. All employees and managers are expected to conduct business internally and externally in accordance with our Code of Conduct and Ethics outlined in this global guide, and deviations from it will not be deemed acceptable nor tolerated. Our commitment to integrity and adhering to the DZS Inc. Code of Conduct and Ethics makes us who we are as a global company.
>
> DZS, thank you for making our Code of Conduct and Ethics a foundational building block of our culture[.]

88.    In a section entitled "Compliance with Laws and Regulations," the Code of Conduct states, in relevant part:

> ***DZS Inc. is committed to complying with both the letter and spirit of the laws and regulations in all jurisdictions in which it operates.***
>
> DZS Inc. and its subsidiaries (hereinafter DZS Inc.), and its directors, officers, employees and agents, are committed to complying with the laws and regulations of the cities, states and countries in which it operates. Violation of governing laws and regulations may subject DZS Inc. to significant risk of fines, penalties and a damaged reputation. All of our officers, directors, employees, and third-party resellers and channel partners (collectively "third parties") are expected to comply with applicable laws, rules and regulations at all times when performing duties for DZS Inc. An officer, employee or agent who violates these laws or this Code may be subject to immediate disciplinary action, including possible termination of employment or, in the case of an agent, termination of contract or affiliation with DZS Inc.

(Emphasis in original).

89.    In a section entitled "General Business Ethics of Employees, Director Officers and Third Parties," the Code of Conduct states:

Under this Code of Conduct and Ethics, each officer, employee and third-party shall:

•  Act with honesty and integrity, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships.

• Comply with rules and regulations of federal, state, provincial and local governments, and other appropriate private and public regulatory agencies applicable to the performance of his or her duties to DZS Inc.

• Respect the confidentiality of information acquired in the course of his or her work except when authorized or otherwise legally obligated to disclose.

90.    In a section entitled "Proper Accounting and Financial Reporting," the Code of Conduct states:

It is of critical importance to DZS Inc. that all disclosure in publicly filed reports and documents be fair, accurate, timely and understandable. You may be called upon to provide information to assist DZS Inc. in these responsibilities consistent with your role within DZS Inc., and to ensure that our public reports are accurate, truthful, complete and understandable. We expect all of our officers, employees and agents to provide prompt and accurate answers to all inquiries made to you in connection with the preparation of our public reports and disclosures. In addition, our Chief Executive Officer, Chief Financial Officer, and other members of our Finance Department each bear a special responsibility for promoting integrity throughout DZS Inc. and fostering a culture throughout DZS Inc. as a whole that ensures the fair and timely reporting of our financial results and condition.

In addition, because of the special role our Chief Executive Officer, Chief Financial Officer, and other members of our Finance Department have in the financial reporting process, they shall:

•  Comply with our established accounting procedures, our system of internal controls and generally accepted accounting principles.

• Provide information that is accurate, complete, objective, relevant, timely and understandable to ensure full, fair, accurate, timely and understandable disclosure in reports and documents that we file with, or submit to, governmental agencies and in other public communications made by DZS Inc.

**Audit Committee Charter**

91.     At all relevant times, the Audit Committee had its charter which set forth the additional duties and responsibilities of the Audit Committee members. The Audit Committee Charter states that the "primary purpose of the Committee is to oversee the accounting and financial reporting processes of the Company and the audits of the Company's financial statements."

92.     In a section entitled "Review of Financial Reporting, Policies and Processes," the Audit Committee Charter sets forth the following responsibilities of the Audit Committee:

1. Review and discuss with management and the independent auditor the Company's annual audited financial statements and any certification, report, opinion or review rendered by the independent auditor.

2. Review and discuss with management and the independent auditor the Company's quarterly financial statements.

3. Review and discuss with management and the independent auditor the Company's disclosure under "Management's Discussion and Analysis of Financial Condition and Results of Operations" appearing in the Company's periodic reports.

4. Review and discuss earnings press releases.

5. Periodically meet separately with management and with the independent auditor.

6. Review with management and the independent auditor any significant judgments made in management's preparation of the financial statements and the view of each as to appropriateness of such judgments.

7. Review with management its assessment of the effectiveness and adequacy of the Company's internal control structure and procedures for financial reporting ("Internal Controls") and review annually with the independent auditor the attestation to and report on the assessment made by management.

8. To the extent that it deems appropriate, review with management its evaluation of the Company's procedures and controls designed to assure that information required to be disclosed in its periodic public reports is recorded, processed, summarized and reported in such reports within the time periods specified by the SEC for the filing of such reports ("Disclosure Controls"), and consider whether

any changes are appropriate in light of management's evaluation of the effectiveness of such Disclosure Controls.

9. Review and discuss with management and the independent auditor any off-balance sheet transactions or structures and their effect on the Company's financial results and operations, as well as the disclosure regarding such transactions and structures in the Company's public filings.

10. Review with management and the independent auditor the effect of regulatory and accounting initiatives on the financial statements. Review any major issues regarding accounting principles and financial statement presentations, including any significant changes in selection of an application of accounting principles.

11. Review any analyses prepared by management and/or the independent auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including the effects of alternative GAAP methods on the financial statements.

12. Review any special audit steps adopted in light of material control deficiencies. Review with the independent auditor and management the extent to which changes or improvements in financial or accounting practices, as approved by the Committee, have been implemented.

## DUTIES OF THE DIRECTOR DEFENDANTS

93.     As members of the Company's Board, the Director Defendants were held to the highest standards of honesty and integrity and charged with overseeing the Company's business practices and policies and assuring the integrity of its financial and business records.

94.     The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that the Director Defendants were aware posed a risk of serious injury to the Company.

95.     By reason of their positions as officers and/or directors of the Company, and because of their ability to control the business and corporate affairs of the Company, the Director Defendants owed the Company and its investors the fiduciary obligations of trust, loyalty, and good faith.  The obligations required the Director Defendants to use their utmost abilities to control

and manage the Company in an honest and lawful manner.  The Director Defendants were and are required to act in furtherance of the best interests of the Company and its investors.

96.    Each director of the Company owes to the Company and its investors the fiduciary duty to exercise loyalty, good faith, and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.  In addition, as officers and/or directors of a publicly held company, the Director Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, finances, and financial condition, as well as present and future business prospects, so that the market price of the Company's stock would be based on truthful and accurate information.

97.    To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the affairs of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a)    ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and investing public;

(b)    conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)    properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and

accurate at all times;

(d)      remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e)      ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f)      ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

98.      Each Director Defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Director Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

99.      The Director Defendants breached their duties of loyalty and good faith by causing the Company to issue false and misleading statements concerning the financial condition of the Company.  As a result, the Company has expended, and will continue to expend, significant sums of money related to investigations and lawsuits and to structure settlements to resolve them.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

100.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, gross mismanagement, and other wrongful conduct as alleged herein.

101.    Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

102.    Plaintiff is a current owner of the Company's common stock and has continuously owned the Company's stock during all times relevant to the Director Defendants' wrongful course of conduct alleged herein.  Plaintiff understands his obligation to hold stock throughout the duration of this action and is prepared to do so.

103.    Because of the facts set forth herein, Plaintiff has not made a demand on the Board to institute this action against the Individual Defendants.  Such a demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

104.    The Company Board is currently comprised of six (6) members – Defendants Vogt, Bross, Kim, Carbone, and Non-Parties Todd Jackson ("Jackson") and Paul Choi ("Choi") (together, the "Current Directors"). Thus, Plaintiff is required to show that a majority of the Current Directors, *i.e.*, three (3) cannot exercise independent objective judgement about whether to bring this action or whether to vigorously prosecute this action.[1]

---

[1]    At the time of filing this complaint, the Company's "Committee Composition" webpage specifically designates Defendants Bross, Kim, and Carbone as "Independent Director[s]," but

105.    Each of the Director Defendants face a likelihood of liability in this action because they caused and/or permitted the Company to make false and misleading statements and omissions concerning the information described herein.  Because of their advisory, managerial, and directorial positions within the Company, the Director Defendants had knowledge of material, non-public information regarding the Company and were directly involved in the operations of the Company at the highest levels.

106.    The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

107.    The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed elsewhere in this complaint, Plaintiff has not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

108.    Each of the Director Defendants, by virtue of their roles, were required to, among other things: (i) ensure that the Company complied with its legal and regulatory obligations and requirements; (ii) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time; (iii) remain informed as to how the Company conducted its operations, make reasonable inquiries, and take steps to correct any improper conditions or practices; and (iv) ensure the Company was operated in a diligent, honest, and prudent manner.  Despite this, the Director Defendants failed to fulfil these duties by permitting

---

make no such designation for Defendant Vogt nor Non-Parties Jackson and Choi. Thus, demand should be excused as futile for this reason, in addition to those that follow.

the false and misleading statements to be made and not correcting those statements.

109.    As a trusted Company directors, the Director Defendants conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded their duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded their duties to protect corporate assets.

110.    Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

111.    Each of the Director Defendants reviewed, authorized, signed, and thus personally made and/or otherwise permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

112.    Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

113.    Despite having knowledge of the history of their own misconduct and mismanagement, the Director Defendants have failed to seek recovery for DZS for any of the misconduct alleged herein.

**THE DIRECTOR DEFENDANTS ARE**
**NOT INDEPENDENT OR DISINTERESTED**

**Defendant Vogt**

114.    Defendant Vogt is neither disinterested nor independent and is thus incapable of

considering a demand to sue because he (as its CEO) is an employee of the Company who derives substantially all of his income from his employment with the Company, making him not independent.  As such, Defendant Vogt cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

115.    As CEO, Defendant Vogt also fails the NASDAQ bright-line independence test as set forth in NASDAQ Listing Rule 5605(a)(2) and cannot, therefore, be considered independent, as admitted by the Company.  As such, Defendant Vogt could not objectively and disinterestedly consider a demand to sue the Individual Defendants and any demand upon Defendant Vogt is therefore futile.

116.    Defendant Vogt also personally reviewed, signed, authorized, and/or made the false and misleading statements alleged herein during earnings calls, in SEC filings, press releases, and in other public forums.  Thus, as a main perpetrator of the wrongdoing alleged herein, Defendant Vogt is irreconcilably conflicted, faces a substantial likelihood of liability, and cannot consider a demand to sue.

117.    In addition, Defendant Vogt receives lucrative compensation in connection with his employment with the Company.  Defendant Vogt is not independent from Defendants Bross, Kim, and Carbone as they comprise the Compensation Committee and are responsible for evaluating and determining the compensation of the CEO and Executive Officers, including Defendant Vogt. The purpose of the Compensation Committee is to assist the Board in discharging its responsibilities related to the compensation provided by the Company to its CEO and Executive Officers.  Because of his status as an inside director, and the concomitant substantial compensation he receives, Defendant Vogt could not consider a demand adverse to the other Director Defendants

serving on the Compensation Committee who are responsible for his financial future.

118.    Because of Defendant Vogt's participation in the gross dereliction of fiduciary duties, and breaches of the duties of due care, good faith, and loyalty, Defendant Vogt is unable to comply with his fiduciary duties and prosecute this action. Defendant Vogt is in a position of irreconcilable conflict of interest in terms of the prosecution of this action and defending himself in the Securities Class Action.

119.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

**Defendants Kim and Carbone**

120.    During the Relevant Period, Defendants Kim and Carbone served as members of the Audit Committee. Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for, *inter alia,* overseeing the accounting and financial reporting processes of the Company and the audits of the financial statements of the Company and the audits of the financial statements of the Company, and otherwise meet their responsibilities as set forth in the Audit Committee Charter as set forth herein.

121.    Specifically, as discussed *supra*, Defendants Kim and Carbone, among other Director  Defendants, ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████

122.    Defendants Kim and Carbone breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise, failed to ensure that adequate internal controls were in place regarding the serious accounting and business reporting issues and deficiencies described above. Therefore, Defendants Kim and Carbone each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

**<u>Additional Reasons Demand is Futile</u>**

123.    The Company has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Current Directors have not caused the Company to take action to recover for the Company the damages it has suffered and will continue to suffer thereby.

124.    The Company, at all material times, had its Code of Conduct and related corporate governance policies which required each of the Individual Defendants to maintain the highest standards of honesty and integrity, particularly in relation to accurate and truthful public disclosures. Yet, despite this Code of Conduct and other relevant policies and committee charters, each of the Director Defendants failed to ensure that the Company upheld high standards of integrity, misrepresented facts to the investing public, and failed to report any concerns, or investigate any misconduct, let alone commence litigation against the Individual Defendants.

125.    In violation of the Code of Conduct, the Director Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to cause the Company to issue materially false and misleading statements to the public and to facilitate and

disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, waste of corporate assets, and unjust enrichment. In violation of the Code of Conduct, the Director Defendants failed to comply with laws and regulations, failed to maintain the accuracy of company records, public reports, and communications, and failed to uphold the responsibilities related thereto. Thus, the Director Defendants face a substantial likelihood of liability and demand is futile as to them.

126.    The Current Directors received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board. They have benefitted from the wrongs alleged herein and have engaged therein to preserve their positions of control and the prerequisites thereof and are incapable of exercising independent objective judgment in deciding whether to bring this action.

127.    The Director Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Current Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company.  Accordingly, demand is excused as being futile.

128.    Publicly traded companies, such as DZS, typically carry director and officer liability insurance from which the Company could potentially recover some or all of its losses. However, such insurance typically contains an "insured vs. insured" disclaimer that will foreclose a recovery from the insurers if the Individual Defendants sue each other to recover the Company's

damages. If no such insurance is carried, then the Current Directors will not cause the Company to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability.  Accordingly, demand is futile in that event.

129.    Accordingly, each of the Current Directors, and at least a majority of them, cannot reasonably consider a demand with the requisite disinterestedness and independence. Indeed, any demand upon the Director Defendants is futile and, thus, excused.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### (Against the Individual Defendants for Breach of Fiduciary Duties)

130.    Plaintiff incorporates by reference and re-alleges each allegation contained above, as though fully set forth herein.

131.    The Individual Defendants owe the Company fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

132.    The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

133.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by allowing the Company to improperly misrepresent the Company's publicly reported financials.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

134.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages.  As a result of the

misconduct alleged herein, the Individual Defendants are liable to the Company.

135.    As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs associated with defending securities lawsuits, severe damage to the share price of the Company, resulting in an increased cost of capital, the waste of corporate assets, and reputational harm.

## SECOND CAUSE OF ACTION

### (Against the Individual Defendants for Gross Mismanagement)

136.    Plaintiff incorporates by reference and re-alleges each allegation contained above, as though fully set forth herein.

137.    By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation.

138.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained significant damages in excess of hundreds of millions of dollars.

139.    Because of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

## THIRD CAUSE OF ACTION

### (Against the Individual Defendants for Waste of Corporate Assets)

140.    Plaintiff incorporates by reference and re-alleges each allegation contained above, as though fully set forth herein.

141.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Period.  It resulted in continuous, connected, and ongoing harm to the Company.

142.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying excessive compensation and bonuses to certain of its executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend the unlawful actions alleged herein.

143.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

## FOURTH CAUSE OF ACTION

### (Against the Individual Defendants for Unjust Enrichment)

144.    Plaintiff incorporates by reference and re-alleges each allegation contained above, as though fully set forth herein.

145.    By their wrongful acts, violations of law, and inaccurate and untruthful information and/or omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and the detriment of, the Company

146.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from the Company that was tied to the performance of the Company or its stock price or received compensation or other payments that were unjust in light of the Individual Defendants' bad faith conduct.

147.    Plaintiff, as a shareholder and representative of the Company, seeks restitution from the Individual Defendants and seek an order from this Court disgorging all profits, including from

insider transactions, the redemption of preferred stock, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

### **FIFTH CAUSE OF ACTION**

#### **(Against the Individual Defendants for Aiding and Abetting)**

148.    Plaintiff incorporates by reference and re-alleges each allegation contained above, as though fully set forth herein.

149.    The Director Defendants exploited, aided and abetted, and were knowing and culpable participants to the breaches of fiduciary duty by the Officer Defendants. Likewise, the Officer Defendants exploited, aided and abetted, and were knowing and culpable participants to the breaches of fiduciary duty by the Director Defendants.

150.    Specifically, the Director Defendants, in violation of the Company's corporate governance, engaged in and/or permitted the Company to engage in the scheme to issue materially false and misleading statements to the public, including in the Company's SEC filings, and by facilitating and disguising the Officer Defendants' violations of law as alleged herein, and failing to report the same.

151.    The Officer Defendants, in violation of the Company's corporate governance, engaged in and/or permitted the Officer Defendants' lack of oversight and scheme to issue materially false and misleading statements to the Company's shareholders to secure, *inter alia*, the re-election of certain Director Defendants, by facilitating and disguising the Director Defendants' violations of law as alleged herein, and failing to report the same.

152.    As a result, the Director Defendants substantially assisted the Officer Defendants, and the Officer Defendants substantially assisted the Director Defendants in breaching their fiduciary duties and in committing the other wrongful and unlawful conduct as alleged herein

153.    As a direct and proximate result of the aiding and abetting the breaches of fiduciary duty alleged herein, the Company has sustained and will continue to sustain significant damages.

154.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

**SIXTH CAUSE OF ACTION**

**(Against the Director Defendants for Violations of § 14(a) of the
Exchange Act, 15 U.S.C. § 78n(a) and Rule 14a-9 (17 C.F.R.§240.14a-9))**

155.    Plaintiff incorporates by reference and re-alleges each allegation contained above, as though fully set forth herein.

156.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

157.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

158.    The Director Defendants violated § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder by the SEC.

159.    The Director Defendants, individually and in concert, disseminated and/or permitted the dissemination of materially false and misleading statements in the 2023 Proxy Statement filed with the SEC.

160.    The 2023 Proxy Statement was used to solicit shareholder votes in connection with the re-election of Defendants Kim and Carbone to the Board and to approve, on an advisory basis, executive compensation for Defendants Vogt and Kawecki, among other things.

161.    The statements contained in the 2023 Proxy Statement were materially false and/or misleading because (i) the Audit Committee did not oversee the Company's accounting and internal financial controls; (ii) the financial statements, which the Audit Committee purportedly reviewed and approved, were inaccurate as a result of the improper accounting of certain customer contracts; and (iii) contrary to the 2023 Proxy Statement, the Director Defendants did not maintain the "highest standards of business integrity" or "protect[] [the Company's] reputation, assets, investor confidence."

162.    Moreover, the 2023 Proxy Statement failed to disclose that: (i) DZS' internal controls over financial reporting was patently defective; (ii) DZS' financial statements contained material errors; (iii) as a result, DZS would need to restate its previously filed financial statements; and (iv) as a result, the statements regarding the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. As such, the foregoing statements in the 2023 Proxy Statement was a half-truth, meaning that the Director Defendants were required to (yet failed to) include all additional information necessary to make the statement not misleading. *See* 17 C.F.R. § 240.12b-20.

163.    In the exercise of reasonable care, the Director Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2023 Proxy Statement were materially false and misleading.

164.    The materially false and misleading statements contained in the 2023 Proxy Statement misleadingly induced shareholders to vote in favor of the election of Defendants Carbone and Kim to the Board, thereby allowing them to continue breaching their fiduciary duties to DZS, and approving the executive compensation of Defendants Vogt and Kawecki.

165.    The Company was damaged as a result of the Director Defendants' material misrepresentations and omissions in the 2023 Proxy Statement.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment as follows:

A.    Determining that this action is a proper derivative action maintainable under law, and that demand is excused;

B.    Awarding, against all the Director Defendants and in favor of the Company, the damages sustained by the Company as a result of Defendants' breaches of their fiduciary duties;

C.    Awarding, against all the Individual Defendants and in favor of the Company, the damages sustained by the Company as a result of the Individual Defendants' unjust enrichment;

D.    Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures, to comply with the Company's existing governance obligations and all applicable laws and to protect the Company and its investors from a recurrence of the damaging events described herein;

E.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 15, 2024

**THE BROWN LAW FIRM, P.C.**

By: */s/ Saadia Hashmi*
    Saadia Hashmi
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: shashmi@thebrownlawfirm.net

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
260 Madison Ave., 22nd Floor
New York, NY 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com

*Attorneys for Plaintiff*

**VERIFICATION**

I, CHIRAG MODY, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of DZS, Inc. and authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of DZS, Inc. common stock at all relevant times.


Chirag Mody (Oct 9, 2024 09:18 GMT+9)

CHIRAG MODY